1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Marsha J Pechman

*FILED*
*LODGED*
*ENTERED*
*RECEIVED*

NOV 06 2001

BY
WESTERN DISTRICT CLERK U S DISTRICT COURT
AT SEATTLE
WESTERN DISTRICT OF WASHINGTON
DEPUTY

MR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALARICE VAUGHNES,

                  Plaintiff,

    v

CITY OF SEATTLE and S. L. DEJESUS, a
Seattle Police Officer,

                  Defendants

No  C01-316P

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF DISMISSAL

NOTE ON MOTION CALENDAR:
FRIDAY, NOVEMBER 30, 2001

## I   INTRODUCTION

One way to receive a one-way ride to a police precinct to be identified is to "jay walk," order a police officer out of an intersection, continue to "jay walk" across the street, refuse to provide proper identification, and then attempt to leave.  This is precisely what underlies the basis of plaintiff's suit, as well as defendants' counter claim for malicious prosecution

On February 17, 1998, during downtown, lunch-hour traffic, Ms. Alarice Vaughnes "jay walked."  She blocked traffic, including a Seattle Police patrol car driven by Officer DeJesus. When asked by Officer DeJesus (who was accompanied by a ride-along citizen) to return to the curb, Ms. Vaughnes ordered Officer DeJesus to get out of the intersection, and then continued across the street.



CV 01-00316  #00000013

RIGINAL

STAFFORD FREY COOPER
───── Professional Corporation ─────
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1   Admittedly, when repeatedly asked by Officer DeJesus for identification for her

2   citation, she refused to provide her date of birth   She also refused to provide her address.

3   She then attempted to leave   When told she would be arrested if she did not provide

4   proper identification, she said, "Arrest me then."  At the precinct, she produced her drivers

5   license – from her back pocket   After being cited for disregarding the "Don't Walk" signal,

6
7   she was released.

8   Ms. Vaughnes insinuates her "race" played a role in her detention.  Her actions, not

9   her race, dictated her detention for identification.   Furthermore, Ms. Vaughnes, Officer

10  DeJesus, and ride-along passenger John Mills are all minorities.

11  Plaintiff's claims fail as a matter of law   Her "false imprisonment" and "assault and

12  battery" claims are barred by the two-year statute of limitations.  Probable cause bars her

13  complaint.  Probable cause existed to issue her a citation for disregarding a "Don't Walk"

14  signal and to detain her to obtain her identification.   Plaintiff is unable to present any

15
16  evidence, whatsoever, to put into dispute the existence of probable cause.

17  Given her actions, she cannot maintain an action for "excessive force "  The only

18  "force" used was that necessary to cuff handcuffs – without incident.  Further, plaintiff was

19  detained at the police precinct for only that amount of time reasonable to establish and

20
21  confirm her identity, one hour and five minutes.

22  Consequently, plaintiff's claims against defendant the City of Seattle ("City") fail, too.

23  Plaintiff's § 1983 claim against the City fails because she is unable to demonstrate that any

24  policy or custom of the City caused the alleged wrongs.  In any event, Officer DeJesus is

25  entitled to qualified immunity, as is the City.

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 2

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ DOC

STAFFORD FREY COOPER
——— Professional Corporation ———
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## II   RELIEF REQUESTED

Come now defendants the City of Seattle and Seattle Police Officer S  L. DeJesus ("defendants"), and, pursuant to Civil Rule 56, request that the Court grant their Motion for Summary Judgment of Dismissal and dismiss plaintiff's Complaint with prejudice.

## III.  STATEMENT OF FACTS

On February 17, 1998, Seattle Police Officer DeJesus was on duty as a patrol officer and was accompanied by a ride-along, citizen passenger named John Mills.  Declaration of Officer DeJesus, ¶ 2, Declaration of John Mills, ¶ 1.  (This incident is unique in that it was witnessed in its entirety by a neutral, ride-along passenger, who happened to be the officer's "shadow" for the day.  Mills Decl., ¶ 11.)

On February 17, 1998, around 12·15 p m , Officer DeJesus was driving the patrol car west bound on Denny Way in Seattle  As he approached the intersection of 1st Avenue North and Denny Way, he and John Mills observed a female in the middle of Denny Way.  See Exhibit B (plaintiff's deposition) to Dale Decl., *Vaughnes Dep.*, p  25, l  20 ("halfway").  She was crossing against the red light, was in traffic, and disregarding the "Don't Walk Signal."  DeJesus Decl , ¶ 3, Mills Decl , ¶ 2.  The traffic signal was green for traffic going East and West on Denny Way.  Cars having the green light had to swerve or stop to avoid hitting her.  In other words, Officer DeJesus had the green light and the female had a red light  DeJesus Decl., ¶ 4; Mills Decl ,¶ 3; see Exhibit A (two-page citation) to Dale Decl.

Officer DeJesus stopped the patrol car and advised the female that she needed to turn back and wait for the green light  In response, she stated "yeah right," ignored Officer DeJesus' instruction, and ordered him to get the patrol car out of the cross walk  She then "continued to cross the street to the corner"  *Vaughnes Dep.*, p. 26, l. 25.  She crossed in traffic against the red light and "Don't Walk Signal "  DeJesus Decl., ¶ 5; Mill Decl , ¶ 4.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF DISMISSAL - 3**

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ DOC

STAFFORD FREY COOPER
Professional Corporation
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Officer DeJesus pulled the patrol car over and politely asked, "What do you think you were doing?" He explained to her that she had crossed against a red light and "Don't Walk Signal" and had obstructed traffic in the intersection   DeJesus Decl., ¶ 6; Mills Decl., ¶ 5.

Officer DeJesus requested her identification. *Vaughnes Dep.*, p 35, l 9.   She became very loud and aggressive towards him.  She then attempted to walk away, saying she was on her lunch break and in a hurry   Officer DeJesus informed her that she was not free to leave, and she became even more hostile, yelling that he had nothing better to do   DeJesus Decl., ¶ 7; Mills Decl , ¶ 6.

Ms. Vaughnes did provide Officer DeJesus with her work identification, but it contained only her name, "Alarice Vaughnes."   DeJesus Decl , ¶ 8, Mills Decl., ¶ 6, *Vaughnes Dep.*, p. 35, l 11, 14; p. 36, l. 22-25.  Under oath, Ms. Vaughnes testified that Officer DeJesus repeatedly asked her for date of birth and she refused to provide it:

Q:   So Officer DeJesus asked you for some identification and you produced your work identification, is that correct? [p. 36, l 22-25; p. 37, l 1-7]

A:   Yes.

Q·   What happens next?

A:   The officer says, This is no good   What's your birth date?

Q   What did you say?

A:   I said, What does my birth date have to do with crossing the street? And the officer said, Give me your birth date or I'm going to arrest you. .

****

Q:   At any time at this intersection did you provide Officer DeJesus with your date of birth? [p  37, l  17]

A;   No, I did not

****

Q   …Prior to producing your identification at the precinct, how many times did Officer DeJesus ask you for your date of birth? [p  39, l. 2-8]

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF DISMISSAL - 4**

STAFFORD FREY COOPER
——Professional Corporation——
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ DOC

1    A:    Twice.

2    Q:    Did you ever provide Officer DeJesus with your date of birth prior to the
     precinct?

3
     A:    No.
4
     ****
5

6    Q:    Did Officer DeJesus ever tell you that you could be arrested if you did
     not provide your date of birth? [p  40, l. 1-3; 9-14]

7    A:    ....I'm not sure I understand your question   I do know that he asked
     me for ID. I gave him my job ID. He said, no good. What's your date of
8    birth?  And I asked him, What does my date of birth have to do with crossing
     the street?  And he said, You give me your date of birth or I'm going to arrest
9    you.

10   *Vaughnes Dep.,* [cites included in above text].

11        Officer DeJesus also asked for her address, and she refused to provide that, too

12   DeJesus Decl., ¶ 8, Mills Decl., ¶ 6.  She also refused to provide her drivers license –

13   which, all along, she had in her back pocket.

14   Q:    Did you have your driver's license with you?

15   A:    I had my driver's license in my back pocket

16   *Vaughnes Dep* , p. 47, l  1-2.

17        Officer DeJesus informed her that he was issuing her a citation and that she was

18   required by law to provide her address and date of birth   He stated that if she did not

19   provide proper identification that she would be arrested   As a last resort, he told her that

20   she could save herself a trip to jail if she simply provided proper identification   To this she

21   responded, "Arrest me then."  DeJesus Decl., ¶ 9; Mills Decl., 7.  She was.

22        Officer DeJesus placed Ms. Vaughnes under arrest, handcuffed her without incident,

23   and transported her to the West Precinct. DeJesus Decl., ¶ 10, Mills Decl., 7   En route Ms

24   Vaughnes was verbally abusive, "yelling things from the back seat," including "f--k y-u."

25   Mills Decl., ¶ 8

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 5

STAFFORD FREY COOPER
————*Professional Corporation*————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

At the West Precinct, she produced for the first time her drivers license – from her back pocket. *Vaughnes Dep.*, p. 54, l. 20-22 She then received a citation and was released. This entire incident (from the time she was contacted until the time she was released) lasted approximately one hour and twenty minutes DeJesus Decl , ¶ 11; Mills Decl., ¶ 10, see also Exhibit C (Event Log) to Dale Decl

Sergeant (now Lieutenant) Landy Black screened this arrest and incident. Declaration of Lieutenant Landy Black, ¶ 1, 2 Officer DeJesus precisely followed the procedures for individuals who refuse to provide their name, address, or date of birth. DeJesus Decl., ¶ 13; Black Decl., 4; see also Exhibit D (procedures) to Dale Decl He took her into custody and transported her to the West Precinct. At the West Precinct, she was detained for only that amount of time reasonable to establish and confirm her identity, one hour and five minutes DeJesus Decl., ¶ 14, Black Decl , 4

Based on his observations, defendant Officer DeJesus believed that on February 17, 1998 he had probable cause to issue a citation to Alarice Vaughnes for disregarding a "Don't Walk Signal" and to arrest and detain her for failing to provide her address and date of birth. DeJesus Decl., ¶ 14 It is the opinion of both Officer DeJesus and Sergeant Black that no reasonable officer could have believed otherwise. DeJesus Decl., ¶ 14, Black, ¶ 4.

At no time did Officer DeJesus ever physically assault Ms. Vaughnes At no time did he ever "manhandle" her. He did not use excessive force. DeJesus Decl., ¶ 15; Mills Decl , 12. At no time was he verbally abusive to Ms. Vaughnes. DeJesus Decl., ¶ 16; Mills Decl , ¶ 13 Officer DeJesus, witness John Mills, and Sgt Black did not observe any injury to Ms. Vaughnes, *nor did they ever hear her complain of any injury* DeJesus Decl., ¶ 17, Mills Decl., ¶ 14, Black Decl , ¶ 6.

STAFFORD FREY COOPER
Professional Corporation
ATTORNEYS
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1    Arising from her "jay walking" incident, plaintiff advances five claims: (1) negligence,

2    (2) false imprisonment, (3) assault and battery, (4) malicious prosecution, and (5) civil rights

3    claims under 42 U S.C. § 1983.  See Exhibit E to Dale Decl.

4    This alleged incident occurred on February 17, 1998. This lawsuit was filed on

5    Tuesday, February 20, 2001.  (Presidents' Day was Monday, February 19, 2001.)  See

6    Dale Decl , ¶ 3.

7                          IV.  STATEMENT OF ISSUES

8    1    Whether plaintiff's "false imprisonment" and "assault and battery" claims are barred
9         by the two-year statute of limitations when this incident occurred February 17, 1998
10        and this suit was filed February 20, 2001?

11   2.   Whether plaintiff's state and federal claims against defendants should be dismissed
          (a) when there was probable cause for issuing her a citation for "jay walking" and for
12        detaining her to obtain proper identification; (b) where the only "force" used was that
          necessary to cuff handcuffs without incident; (c) when she was detained for only that
13        amount of time reasonable to establish and confirm her identity, (d) when plaintiff
          cannot demonstrate her damages were caused by any policy or practice of the City,
14        and (e) when defendants are entitled to qualified immunity

15

16                        V  EVIDENCE RELIED UPON

17   Defendants rely upon the Declaration of Tobin Dale, the Declaration of Officer

18   DeJesus, the Declaration of Sergeant Landy H  Black, the Declaration of John S. Mills, and

19   the files and records of this matter.

20

21                   VI. AUTHORITY AND ARGUMENT

22   "EXCESSIVE FORCE" CLAIMS NO LONGER PRECLUDE SUMMARY JUDGMENT

23   "Excessive force" is no longer the catch phrase that plaintiffs can carelessly throw

24   around to preclude summary judgment of dismissal   Saucier v. Katz, 121 S Ct  2151

25   (2001), accord, Jackson v. City of Bremerton, 9th Cir  Slip Opinion dated October 5, 2001,

26   Cause No. 99-36159.  [A copy of the Jackson Opinion attached as Exhibit F to Dale Decl.]

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 7

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ DOC

STAFFORD FREY COOPER
———Professional Corporation———
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1
2
3
4
5
6

(discussed in detail in Sections C & E). In fact, where – as here – defendants seek qualified immunity, a summary judgment "ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier, 533 U.S. ___ (2001). "We repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v Bryant, 502 U.S. 244, 227 (1991)

7
8
9
10
11
12
13
14
15
16
17
18
19

Defendants in a civil action are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show that the matter does not involve any genuine issue of material fact  Fed R Civ P 56(c).  The moving party need only demonstrate that there is an absence of evidence supporting an element essential to the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S Ct 2548 (1986).  Once the moving party meets its burden, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial"  Id  That is, the non-moving party "must present significant probative evidence tending to support its claim or defense." Richards v Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)  The non-moving party may not rely merely on conclusory allegations, speculative statements or argumentative assertions, but must produce independent evidence showing that a genuine issue exists. Fed. R. Civ. P. 56(e).

20

## 101: RULES OF THE ROAD RE: IDENTIFICATION

21
22

RCW 7.80.060 requires an individual to provide law enforcement with his or her name, address, and date of birth when receiving a notice of civil infraction

23
24
25

> A person who is to receive a notice of civil infraction under RCW 7.80.050 **is required to identify** himself or **herself** to the enforcement officer **by giving** his or **her name, address, and date of birth.** Upon the request of the officer, the person **shall produce reasonable identification, including a driver's license or identicard.**

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 8

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ DOC

STAFFORD FREY COOPER
Professional Corporation
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

A person who is unable or **unwilling to reasonably identify himself or herself to an enforcement officer may be detained for a period of time not longer than is reasonably necessary** to identify the person for purposes of issuing a civil infraction.

Each agency authorized to issue civil infractions shall adopt rules on identification and detention of persons committing civil infractions.

RCW 7.80.060. (emphasis added).

The Seattle Police Department has adopted the following procedures on identification and detention of persons committing civil infractions·

VII.   *Administrative Processing - Identification*

A.      Anyone being issued a civil infraction is required under RCW 7.80.060 to provide their name, address, and date of birth.  Upon the request of an officer, *they are required to produce reasonable identification, including a driver's license or identification card.*

B.      Anyone unable or unwilling to identify themselves may be detained for an amount of time reasonable to establish or confirm their identity.

C.      If the violator's identity is in doubt, officers shall comply with the following:

1.      Take the violator into custody and transport them to a police precinct,

2.      Detain the violator only long enough to be photographed, fingerprinted, and identified,

3.      Remain with the violator during the above process, and

4.      Complete an Incident Report to document the administrative procedure.

See Exhibit D to Dale Decl

A.   **PLAINTIFF'S "FALSE IMPRISONMENT" AND "ASSAULT & BATTERY" CLAIMS ARE BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS.**

RCW 4.16.100 establishes a two-year statute of limitations for certain intentional torts, including "assault, assault and battery, or false imprisonment."  RCW 4.16 100(1).  In her complaint, plaintiff alleges claims for "false imprisonment" and "assault and battery," arising from her arrest on February 17, 1998   The two-year statute of limitations contained

STAFFORD FREY COOPER
———— *Professional Corporation* ————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

in RCW 4.16.100 expired on February 17, 2000, 368 days before plaintiff finally filed her complaint for damages on February 20, 2001.    As a result, her claims for "false imprisonment" and "assault and battery" are time barred. See RCW 4.16.100(1), Boyles v. City of Kennewick, 62 Wn. App  174, 176, 813 P 2d 178, *review denied*, 118 Wn.2d 1006, 822 P.2d 288 (1991)(assault and battery claim barred by two-year statute of limitations)

## B.    PLAINTIFF'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff advances four state law claims against defendants  (1) negligence, (2) malicious prosecution, (3) false imprisonment, and (4) assault and battery.  These latter two claims ("false imprisonment" and "assault and battery") are time barred by the two-year statute of limitations (as explained in Section A).   None of these claims can survive summary judgment, as plaintiff lacks evidence to support her claims, and as Officer DeJesus had probable cause to cite her for disregarding a "Don't Walk" signal and to detain her to obtain her identification

### 1.    Plaintiff cannot maintain a claim for "negligence."

The essence of an action is determined from the factual allegations in the complaint as a whole, and it is not government by any particular words used in the pleading   See Martin v. Payton Scaffolding, 37 Wn  App  37, 39, 678 P 2d 362 (1984).

In this case, plaintiff advances a "negligence" claim, but does not state any facts in her complaint to support it.   She claims she was injured when she was "physically assaulted, handcuffed, and taken to the King County Jail [1]"  Complaint, p. 2, l. 8, 22.  She claims these acts constituted "negligence." Id. at p  2, l  10   However, these are intentional – not negligent – acts. See e.g., Boyles, 62 Wn. App. at 176 (allegations of excessive force

---

[1] Plaintiff erroneously states she was taken to the Jail, when she was only taken to the West Precinct for identification

STAFFORD FREY COOPER
————— *Professional Corporation* —————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1   and assault and battery do not constitute "negligence"); Kellogg v. State, 94 Wn.2d 851,

2   856, 621 P.2d 133 (1980)(false imprisonment is an intentional tort).

3       For example, in Boyles, which involved a complaint remarkably similar to Ms.

4   Vaughnes' complaint, the plaintiff alleged the following:

5       [the arresting police officer] . .   used excessive force in arresting claimant   .
6       The arrest was improper and excessive, including shoving and wrenching
        plaintiff's arm behind her back, and handcuffing her in spite of complaints that
7       she was in pain and discomfort   As a result of this excessive and improper
        action plaintiff has suffered pain and disability...

8   Boyles, 62 Wn. App. at 177.  The court in Boyles held that these allegations constituted a

9   claim for "assault and battery" – not negligence – subjecting these claims to the two-year

10  statute of limitations, and thus barring plaintiff's complaint.  The court went on to explain its

11  holding·

12      As Ms. Boyles points out, there are no Washington cases mandating a claim
13      of assault and battery for all injuries inflicted during or after an arrest.  While a
        claim for negligence against a police officer is possible, **it is not raised by
14      the factual allegations of the complaint in this case . . . ; additional facts
        would be necessary to support it.**

15  Boyles, 62 Wn  App. at 178   (emphasis added.)

16      Like the complaint in Boyles, Ms. Vaughnes' complaint alleges intentional conduct.

17  Because allegations of intentional conduct cannot support a claim for "negligence," her

18  "negligence" claim fails as a matter of law.

19      **2.    Probable cause defeats plaintiff's claim for "malicious prosecution."**

20      Malicious prosecution actions are not favored in law   Hanson v  Snohomish, 121

21  Wn.2d 552, 557, 852 P 2d 295 (1993).  To maintain an action for malicious prosecution, a

22  plaintiff must plead and prove the following elements:

23      (1) that the prosecution claimed to have been malicious was instituted or
24      continued by the defendant, (2) that there was want of probable cause for the
        institution or continuation of the prosecution; (3) that the proceedings were
25      instituted or continued through malice; (4) that the proceedings terminated in
        favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered
26      injury or damage as a result of the prosecution

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 11**

STAFFORD FREY COOPER
Professional Corporation
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ DOC

1  <u>Id</u> at 558. The gist of an action for malicious prosecution rests on malice and want of

2  probable cause. <u>Bender v. Seattle</u>, 99 Wn.2d 582, 591, 664 P.2d 492 (1983). The

3  existence of probable cause is a complete defense to an action for malicious prosecution

4  <u>Hanson</u>, 121 Wn 2d at 558. Probable cause exists where the facts and circumstances

5  within a person's knowledge and of which he has reasonably trustworthy information are

6  sufficient to warrant a person of reasonable caution to believe that an offense has been

7  committed. <u>Bender</u>, 99 Wn.2d at 597. Malice is immaterial where probable cause appears.

8  <u>Huf v. Hague</u>, 171 Wash. 302, 17 P.2d 844 (1933)

9       Probable cause exists when the facts and circumstances within the officer's

10  knowledge are sufficient to cause a person of reasonable caution to believe that a crime

11  has been committed   <u>Ybarra v. Illinois</u>, 444 U.S. 85, 91 (1979); <u>State v. Rogers</u>, 70 Wn

12  App. 626, 632, 855 P.2d 294, <i>review denied</i>, 123 Wn.2d 1004, 868 P.2d 872 (1993). The

13  validity of an arrest is determined by objective facts and circumstances known to the officer

14  at the time of arrest   <u>Beck v. Ohio</u>, 379 U.S 89, 96 (1964), <u>State v. Huff</u>, 64 Wn. App. 641,

15  645-46, 826 P 2d 698 (1992); <u>State v Fore</u>, 56 Wn. App. 339, 783 P.2d 626 (1989). "It is

16  immaterial whether or not the [arrestee] was actually violating the law at the time of the

17  arrest if in fact his conduct was such as to lead a reasonable prudent officer to believe in

18  good faith he was violating the law." <u>Sennett v Zimmerman</u>, 50 Wn 2d 649, 651, 314 P 2d

19  414 (1937), <i>citing</i> <u>Coles v. McNamara</u>, 136 Wash. 624, 627, 241 Pac. 1 (1925).

20       In this case, probable cause clearly existed to issue Ms. Vaughnes a citation for

21  disregarding a "Don't Walk" signal[2] and to detain her to obtain her identification. Plaintiff is

22  unable to present any evidence, whatsoever, to dispute the existence of probable cause

23

24  _____

25  [2] Per SMC 11.50.280, <i>"Don't walk" pedestrian-control signal</i>, "Pedestrians facing a steady
    or flashing "DON'T WALK" word legend or a hand symbol signal shall not enter the
    roadway, but if pedestrians have begun to cross before the display of either signal, vehicle
26  operators shall stop to allow them to complete their movements"

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 12**

STAFFORD FREY COOPER
————Professional Corporation————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1   Here, both Officer DeJesus and John Mills, the ride-along citizen passenger,

2   observed Ms. Vaughnes in downtown, noon-hour traffic "jay walk" and obstruct traffic.

3   Clearly, this violated the "jay walking" statute, SMC 11.50.280.

4   Her comments and actions do not end here, however. Admittedly, despite repeated

5   requests, she refused to provide proper identification and her date of birth:

6   Q:   ...Prior to producing your identification at the precinct, how many times
7        did Officer DeJesus ask you for your date of birth?

8   A:   Twice

9   Q:   Did you ever provide Officer DeJesus with your date of birth prior to the
     precinct?

10  A:   No.

11  *Vaughnes Dep* , p. 39, l. 2-8.

12  In plain view and ear shot of the ride-along citizen passenger, Officer DeJesus kindly

13  and repeatedly explained to Ms. Vaughnes that he was issuing her a citation and that she

14  was required by law to provide her address and date of birth   See RCW 7.80.060 (cited in

15  full earlier). He also stated that if she did not provide proper identification that she would be

16  arrested.   See RCW 7.80.060 (stating that "[a] person who is unable or unwilling to

17  reasonably identify himself or herself to an enforcement officer may be detained for a

18  period of time not longer than is reasonably necessary to identify the person"). In response

19  to this final proposal that she save herself a trip to jail by providing proper identification, she

20  responded, "Arrest me then " And she was

21  Plaintiff's "malicious prosecution" claim is not well taken given the fact that at the

22  West Precinct she produced – from her back pocket – her drivers license.   She was

23  detained at the West Precinct for only that amount of time reasonable to establish and

24  confirm her identity, one hour and five minutes. This entire incident would not had occurred

25  had Ms. Vaughnes not "jay walk," or simply provided her date of birth and address, or

26

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 13**

STAFFORD FREY COOPER
——— *Professional Corporation* ———
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1    simply provided her drivers license – which she had, all along, in her back pocket.

2    *Vaughnes Dep.*, p. 47, l. 1-2.

3        In short, the existence of probable cause to cite plaintiff for "jay walking" and to

4    detain her to obtain her proper identification (authorized by state law) is a complete defense

5    to plaintiff's "malicious prosecution" claim. Therefore, this claim fails as a matter of law

6

7    **C.    PLAINTIFF WAS NOT DEPRIVED OF ANY FEDERAL CONSTITUTIONAL RIGHTS AND IS THEREFORE UNABLE TO MAINTAIN A § 1983 ACTION.**

8        42 U.S.C § 1983 ("§ 1983") does not apply in the absence of a federal constitutional

9    violation. "Section 1983 is not itself a source of substantive rights," but merely provides "a

10   method for vindicating federal rights elsewhere conferred." Graham v. Conner, 490 U.S

11   386, 109 S Ct. 1865, 104 L.Ed 2d 443 (1989), *quoting in part* Baker v. McCollan, 443 U.S

12   137, 144, n 3, 99 S.Ct 2689, 61 L Ed.2d 433 (1979)  Consequently, for plaintiff to have

13   standing to maintain a § 1983 claim, she must first demonstrate that the officers deprived

14   her of a right secured by the Constitution and the laws of the United States    Flagg

15   Brothers, Inc v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed 2d 185 (1978); Wood v

16   Ostrander, 879 F.2d 583, *cert. denied*, 498 U S. 938 (9th Cir  1989); American Legion Post

17   No  32 v. City of Walla Walla, 116 Wn.2d 1, 12, 802 P.2d 784 (1991).

18       Without any detail, plaintiff merely states that Officer DeJesus' acts "constituted a

19   violation of Plaintiff's federal civil rights in violation of 42 USC § 1983, including violations of

20   her 1st, 4th, and 14th Amendment rights protected by that Statute." Complaint, p. 2, l. 18-19.

21   There is absolutely no evidence, however, that Officer DeJesus violated plaintiff's 1st, 4th, or

22   14th Amendment rights    Plaintiff is therefore unable to make the necessary threshold

23   showing, and her § 1983 claim should be dismissed.

24

25

26

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF DISMISSAL - 14**

STAFFORD FREY COOPER
——*Professional Corporation*——
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1.   **Probable Cause defeats plaintiff's First Amendment claim (as it is subject to Fourth Amendment analysis).**

An individual's first amendment rights are not unfettered   <u>Cantwell v. Connecticut,</u> 310 U.S. 296, 308 (1940). "A citizen's privilege to use the streets    . to communicate his or her views .   is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order." <u>Hague v. Committee for Indus. Org</u>, 307 U.S. 496, 515-16 (1939).  When interference with traffic upon the public streets appears, the state's power to prevent or punish is obvious. <u>Cantwell</u>, 310 U.S. at 308   Accordingly, if an officer has probable cause to arrest, he may do so even if that arrest implicates a First Amendment interest. <u>Zurcher v  Stanford Daily</u>, 437 U.S  547, 565 (1978) (noting that probable cause affords sufficient protection against First Amendment harms).

Thus, when First Amendment activity becomes the subject of police activity, Fourth Amendment protections come into play, and the court should analyze the claim under the Fourth Amendment. <u>United States v. Rubio</u>, 727 F 2d 786, 791 (9th Cir  1983).

Here, plaintiff alleges a "First Amendment" claim, but fails to state any facts to support it.  In any event, the success of this claim is contingent upon whether probable cause justified her citation and detention notwithstanding her interest in free speech  This claim, therefore, must be analyzed under the Fourth Amendment.   Because Officer DeJesus had ample probable cause to cite and detain plaintiff, this claim must fail as a matter of law.  <u>See</u> *Probable Cause* discussion in Section B, 2 and *Fourth Amendment* discussion in Section C, 3 & 4.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 15

STAFFORD FREY COOPER
— *Professional Corporation* —
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1

2.   **Probable Cause defeats plaintiff's Fourteenth Amendment claim (as it is subject to Fourth Amendment analysis).**

2

3     Plaintiff's Fourteenth Amendment claim is properly analyzed under the Fourth

4     Amendment, and consequently fails as a matter of law

5         a.   Plaintiff was not deprived of substantive due process

6         Where a particular amendment provides an explicit textual source of constitutional

7     protection against a particular sort of government behavior, "'that [a]mendment, not the more

8     generalized notion of substantive due process, must be the guide for analyzing' such a claim "

9     Albright v  Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed  2d 114 (1994) (citing

10    Graham, 490 U.S. at 395).

11

12        Here, plaintiff alleges her "14th Amendment rights protected by that Statute were

13    violated."  Complaint, p. 2, l. 19   However, by her own admission, the deprivations she

14    alleges occurred as a result of her citation and detention for identification.   The Fourth

15    Amendment provides redress against these claims  Albright, 510 U.S  at 274-75 (noting that

16    the Fourth Amendment addresses the matter of pretrial deprivations of liberty and is

17    relevant to the liberty deprivations that accompany arrest, holding that arrest by state

18    authorities without probable cause must be analyzed under the Fourth Amendment)   As

19    such, those claims must be judged under that amendment   Id.  Because probable cause

20    exists, plaintiff's claims for 14th Amendment deprivation fail as a matter of law  See Probable

21    Cause discussion in Section B, 2 and Fourth Amendment discussion in Section C, 3 & 4.

22

23        2.   Plaintiff was not deprived of procedural due process

24        Additionally, plaintiff cannot maintain a procedural due process claim based on her

25    citation and detention for identification.  A procedural due process claim under § 1983 is not

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 16

STAFFORD FREY COOPER
————— Professional Corporation —————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ DOC

1  actionable unless no adequate post-deprivation remedy is available under state law.  Hudson

2  v. Palmer, 468 U.S 517, 531, 536 (1984), Parratt v Taylor, 451 U S  527, 535-544 (1981)

3  As the court stated in Rutledge v Arizona Board of Regents, 660 F.2d 1345 (9th Cir. 1981)

4

5          The Supreme Court in Parratt v. Taylor indicated that when no practical way to
           provide a pre-deprivation hearing exists, a post-deprivation hearing provided at
6          a meaningful time and in a meaningful manner will suffice  The issue becomes
           merely whether the remedies available under [state] law in the [state] courts
7          constitute the post-deprivation hearing required by the Fourteenth Amendment.
           . . In the instant case, since appellant has sought redress in the Arizona State
8          courts, and in the absence of suggestion that the post-deprivation procedure
           under state law are deficient, we must conclude the alleged deprivation [of civil
9          rights] was not without due process of law.

10  Id. at 1352.

11         Here, defendants could not, nor were they required to, provide plaintiff with a pre-

12  deprivation hearing before detaining her for identification     Rather, Washington law

13  expressly provides for such detention.  See RCW 7 80 060.  Furthermore, plaintiff has an

14
    adequate post-deprivation remedy available to her under state law: the legal recourse of
15
16  suing on her claims in state and federal court.  Plaintiff cannot dispute that the available

17  post-deprivation remedy is adequate.  This claim, therefore, fails as a matter of law.

18
             **3.      Probable cause defeats plaintiff's Fourth Amendment Violation based**
19           **on plaintiff's detention.**

20         To the extent plaintiff's Fourth Amendment claim is based on her alleged "false

21  imprisonment" claim, it fails as a matter of law for two reasons.  First, plaintiff's "false

22  imprisonment" claim is time barred by the two-year statute of limitations.  See RCW

23  4.16.100(1)(discussed in Section A)  Plaintiff, therefore, has no Fourth Amendment claim

24  on a barred cause of action.

25

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 17

STAFFORD FREY COOPER
——— Professional Corporation ———
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1

2       Second, the existence of probable cause constitutes an absolute bar to a § 1983

3   action for false imprisonment.  See e.g., Hennick v Bowling, 115 F.Supp. 2d 1204, 1207

4   (W.D. Wash. 2000)(where "probable cause existed, no triable issue of fact exists on

5   plaintiff's Fourth Amendment claims"), United States v. Smith, 790 F.2d 789, 792 (9th Cir

6   1986); Marx v Gumbinner, 905 F 2d 1503, 1505 (11th Cir. 1990); Schertz v. Waupaca

7   County, 875 F.2d 967, 969 (7th Cir. 1989), Simpson v. Saroff, 741 F. Supp. 1073, 1077

8   (S.D.N.Y. 1990), citing, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.E.2d 288 (1967).

9   As explained in detail in Section B (2), Officer DeJesus had probable cause to cite plaintiff

    for "jay walking" and to detain her for identification.  Consequently, her claims fail.

10

11          **4.     No Fourth Amendment Violation based on "force" used by Officer
                 DeJesus.**

12      Plaintiff's constitutional right under the Fourth Amendment to be free from "excessive

13   force" was not violated.  Because this claim fails, so does her suit.

14      Under the Fourth Amendment, police officers are entitled to use reasonable force

15   when effecting an arrest  Graham v. Conner, 490 U S  at 396; RCW 9A 16.020.  To prevail

16   on a constitutional excessive force claim, a plaintiff must prove each of the following three

17   elements: (1) significant physical injury, which (2) resulted directly and only from the use of

18   force that was clearly excessive to the need, and the excessiveness of which was (3)

19   objectively unreasonable  Busch v. Torres, 905 F.Supp. 766, 772 (C.D.Cal 1995), citing,

20   Johnson v. Morel, 876 F.2d 477, 480 (5th Cir. 1989).  The plaintiff's Fourth Amendment

21   rights are intact if a court finds that an officer's conduct was "objectively reasonable" in light

22   of the surrounding circumstances  Graham v. Conner, 490 U S  at 397.

23      The "reasonableness" of a particular use of force must be judged from the

24   perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

25   hindsight. "  Graham v. Conner, 490 U.S. at 396   The court must consider "the fact that

26

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 18**

STAFFORD FREY COOPER
———— *Professional Corporation* ————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-397. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id at 396 (quoting Johson v Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

The court may determine as a matter of law that a particular use of force was reasonable if, in resolving all factual disputes in favor of the plaintiff, the officer's force was "objectively reasonable" under the circumstances. See e.g., Saucier, 121 S. Ct. 2151 (2001); accord, Jackson v. City of Bremerton, 9th Cir Slip Opinion dated October 5, 2001, Cause No. 99-36159(discussed below); Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994); Liston v. County of Riverside, 120 F 3d 965, 976 n.10 (9th Cir. 1997); Eberle v. City of Anaheim, 901 F.2d 814, 820 (9th Cir. 1990)(officer's use of finger hold on unruly fan deemed reasonable as a matter of law).

In this case, the only "force" used by Officer DeJesus was that necessary to cuff handcuffs – without incident – on Ms. Vaughnes, who had attempted to leave and who had initially resisted   See DeJesus Decl , ¶ 10; Mills Decl , ¶ 7   Even resolving factual disputes in favor of Ms. Vaughnes, Officer DeJesus' "force" was "objectively reasonable" as a matter of law   She claims "[h]e twisted my left arm behind my back and pulled it up toward my neck, dragged me ['a few feet'] over to the patrol car and slammed me down on the back of the trunk of the car"; "put his knee into the small of my back"; handcuffed me; "pulled me over to the side of the back of the patrol car and pushed me into the seat." Vaughnes Dep., p 44, l. 25; p 45, l 1-3, 6, 20; p 46, l. 17-19.

Under facts much more compelling than those alleged here, the Ninth Circuit just last month dismissed the plaintiff's claims of "excessive force" on summary judgment. See

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 19

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ.DOC

STAFFORD FREY COOPER
Professional Corporation
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

<u>Jackson v  City of Bremerton</u>, 9th Cir. *Slip Opinion* dated October 5, 2001, Cause No. 99-36159. [A copy of the <u>Jackson</u> Opinion attached as Exhibit F to Dale Decl.]

In <u>Jackson</u>, Ms. Jackson claimed the officers violated her Fourth Amendment rights by using excessive force in arresting her at a family barbecue in a public park when she attempted to interfere with the arrest of her adult son.  <u>Jackson</u>, p  14231.  Specifically, Ms Jackson alleges the following uses of force·

> 1) she was sprayed with a chemical irritant prior to her arrest; 2) three officers pushed her to the ground to hand cuff her and roughly pulled her up to her feet during her arrest, and 3) an officer 'rolled up the windows and turned up the engine in the July heat in order to 'adjust her attitude' '

<u>Jackson</u>, p. 14236   She also alleged "injury during what she admits was a normal handcuffing procedure."  <u>Id</u>   For purposes of summary judgment, the Ninth Circuit assumed Jackson's version of the facts to be correct – and "conclude[d]. that the use of force was not excessive in this case "  <u>Id</u>. at p. 14239   In so doing, the Ninth Circuit affirmed the lower court· "Because no Fourth Amendment violation occurred, the district court properly granted summary judgment in the officers' favor "  <u>Id</u>

Unlike the officers' use of force in <u>Jackson</u> to arrest the plaintiff, in this case Officer DeJesus effected the arrest of Ms  Vaughnes *without* spraying chemical irritant on her, and *without* placing her into a police car with the heat on and the windows rolled up on 90-degree heat in order to "adjust her attitude."   Consequently, under <u>Saucier</u> and <u>Jackson</u>, Officer DeJesus' use of "force" as a matter of law was not excessive, her Fourth Amendment rights were not violated, and he is entitled to summary judgment of dismissal of these claims.

**D.   THE CITY OF SEATTLE'S CONDUCT DID NOT RISE TO THE LEVEL OF AN OFFICIALLY SANCTIONED POLICY OR PRACTICE.**

Assuming, *arguendo*, that Officer DeJesus' conduct constituted a violation of plaintiff's constitutional rights, her § 1983 claims against the City should be dismissed.  Plaintiff has set

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 20

STAFFORD FREY COOPER
*Professional Corporation*
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1   forth no facts, nor can she, establishing an official policy or custom on the part of the City of

2   Seattle to support a claim of liability under § 1983. Moreover, even if a policy or custom is

3   unearthed by plaintiff, she is unable to make the requisite causal showing between the

4   municipal policy and the alleged wrongdoing by the arresting officers sufficient to support a

5   constitutional claim under § 1983.

6         The leading case on the municipal liability under § 1983 is Monell v. Dept. of Social

7   Services, 436 U S. 658, 98 S.Ct 2018, 56 L Ed.2d 611 (1978).

8         In Monell, . . . we decided that a municipality can be found liable under § 1983
9         only where the municipality itself caused the constitutional violations at issue
          Respondeat superior vicarious liability will not attach under § 1983. It is only
10        when the execution of the government's policy or custom . . . inflicts the injury
          that the municipality may be held liable under § 1983. Thus our first inquiry in
11        any case alleging municipal liability under § 1983 is the question of whether
          there is a direct causal link between the municipality or custom, and the alleged
12        constitutional deprivation.

13  City of Canton, Ohio v. Harris, 489 U S. 378, 385, 109 S Ct. 1197, 103 L.Ed.2d 412 (1989). A

14  municipality may not be held liable under § 1983 merely because the plaintiff has suffered a

15  deprivation of federal rights at the hands of a municipal employee.    Bryan County

16  Commissioners v Brown, 520 U.S.__, 117 S.Ct. 1382, 1389, 137 L.Ed.2d 626 (1997).

17  Instead, the plaintiff must identify a municipal policy or custom which itself caused the

18  plaintiff's injury   Id. at p 1388.  The existence of a policy or custom for purposes of a

19  constitutional action cannot be established solely on the occurrence of a single incident of

20  unconstitutional action by a non-policymaking employee  Oklahoma City v. Tuttle, 471 U.S.

21  808, 105 S.Ct 2427, 85 L Ed 2d 791 (1985); Davis v Ellensburg, 869 F.2d 1230 (9th Cir

22  1989).

23        There is no evidence, whatsoever, beyond the facts of this case that suggest that any

24  policy or custom on the part of the City of Seattle proximately caused a violation of plaintiff's

25  Fourth Amendment rights.  Where, as here, the entire case is based upon one incident,

26  plaintiff's civil rights claims against the City must be dismissed.

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 21**

STAFFORD FREY COOPER
Professional Corporation
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

**E.    QUALIFIED IMMUNITY BARS ALL OF PLAINTIFF'S CLAIMS.**

Police officers are entitled to qualified immunity from suit for claims based upon their official actions. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), Smiddy v. Varney, 665 F.2d 261 (9th Cir. 1981). The defense of qualified immunity protects defendants from § 1983 "liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Jackson v. City of Bremerton, 9th Cir. Slip Opinion, dated October 5, 2001, p. 14234, Cause No. 99-36159 (attached as Exhibit F to Dale Decl.), citing Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Following the Supreme Court's recent Opinion in Saucier v. Katz, 121 S. Ct. 2151 (2001), the qualified immunity standard in excessive force cases involves a new[3] multi-step analysis. In Jackson v. City of Bremerton, the Ninth Circuit last month explained this standard as follows

> After Saucier, a qualified immunity analysis must begin with this threshold question: Based upon the facts taken in the light most favorable to the party asserting the injury, **did the officer's conduct violate a constitutional right?** Id., at 2156. If no constitutional right was violated, the court need not inquire further Id. **If, however, a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably, but mistakenly, believed that his or her conduct did not violate a clearly established constitutional right.** Id., at 2158-59.

Jackson, p. 14235. (emphasis added.) The Saucier qualified immunity standard, "requiring courts to focus first on the underlying constitutional issue, is intended to assist courts in disposing of insubstantial suits at an early stage of litigation." Saucier, 121 S. Ct. at 2156.

---

[3] In prior Opinions of the Ninth Circuit, the court had held that the inquiry into whether the force used was reasonable under the Fourth Amendment is the same inquiry as that for qualified immunity However, the Ninth Circuit's standard has been specifically overruled by the United States Supreme Court in Saucier v. Katz, 121 S. Ct. 2151 (2001), accord, Jackson v. City of Bremerton, Slip Opinion dated October 5, 2001, Cause No. 99-36159.

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 22**

STAFFORD FREY COOPER
Professional Corporation
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1    Utilizing this analysis, the Ninth Circuit in Jackson concluded that a plaintiff's

2    complaint that she was sprayed with a chemical irritant, roughly pushed to the ground,

3    handcuffed, and placed into a police car with the heat on and the windows rolled up on 90-

4    degree heat in order to "adjust her attitude," did not state a constitutional claim  (Thus, the

5    court did not address whether an officer could have believed his actions proper.)

6    Consequently, the court held that the officers were entitled to qualified immunity.

7

8    Under the new case law by the Supreme Court in Saucier and the Ninth Circuit's

9    Opinion in Jackson, Officer DeJesus is entitled to qualified immunity.  Plaintiff cannot clear

10   any of multi-steps required to defeat a qualified immunity defense as set forth in Saucier

11   First, she cannot show that Officer DeJesus' conduct violated her 1st, 4th, or 14th

12   Amendment rights (as discussed in detail in Section C, 1 - 4)

13

14   Second, assuming arguendo that Officer DeJesus' conduct constituted a violation of

15   her constitutional rights, she cannot show that he could not "have reasonably, but

16   mistakenly, believed that his or her conduct did not violate a clearly-established

17   constitutional right"  The qualified immunity standard "gives ample room for mistaken

18   judgments" by protecting "all but the plainly incompetent or those who knowingly violate the

19   law." Hunter v. Bryant, 502 U.S. 224, 227 (1991), citing Malley v. Briggs, 475 U S  335,

20   343, (1986); Mills v Graves, 930 F 2d 729, 731 (9th Cir 1991)  In a case involving a

21   question of whether probable cause existed to support an officer's actions, "the case should

22   not be permitted to go to trial if there is any reasonable basis to conclude that probable

23   cause existed"  Cross v. City of Des Moines, 965 F.2d 629, 632 (8th Cir. 1992), citing

24   Hunter v. Bryant, 502 U S  at 227  It is of no consequence to a determination of qualified

25

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 23

STAFFORD FREY COOPER
Professional Corporation
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

immunity that probable cause to arrest did not in fact exist. <u>Fuller v. M.G. Jewelry</u>, 950

F.2d 1437, 1443 (9th Cir. 1991), <i>citing</i> <u>Anderson</u>, 483 U.S. at 641

In this case, Officer DeJesus could (and did) reasonably believe Ms. Vaughnes was

required by law to provide her address and date of birth.  RCW 7.80.060 requires this

information.  <u>See</u> RCW 7.80 060.  Officer DeJesus could (and did) reasonably believe Ms.

Vaughnes could be detained for an amount of time reasonable to establish and confirm her

identity.  RCW 7.80 060 expressly provides for this.  <u>See</u> RCW 7.80.060.  Officer DeJesus

precisely followed the procedures for individuals who refuse to provide their name, address,

or date of birth.  <u>See</u> Exhibit D (procedures) to Dale Decl   In short, Officer DeJesus could

have (and did) believe his actions proper.  Officer DeJesus, therefore, is entitled to the

defense of qualified immunity   An employing municipality is shielded from liability where its

officer is entitled to qualified immunity.  <u>Frost v. Walla Walla</u>, 106 Wn.2d 669, 674, 724 P 2d

1017 (1986).  Consequently, the City and Officer DeJesus are immune from the plaintiff's

state and federal claims.

## VII  CONCLUSION

<i>For all of the reasons set forth above, defendants the City of Seattle and Officer</i>

<i>DeJesus respectfully request that the plaintiff's Complaint be dismissed</i> <i>with prejudice.</i>

DATED this 6th day of November, 2001.

STAFFORD FREY COOPER

By _____
    Stephen P. Larson, WSBA # 4959
    Tobin E. Dale, WSBA # 29595
    Attorneys for Defendants

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 24

STAFFORD FREY COOPER
————— Professional Corporation —————
A T T O R N E Y S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900

1

## Certificate of Service

2      The undersigned certifies under the penalty of perjury according to the laws of the
United States and the State of Washington that on this date I caused to be served in the
3  manner noted below a copy of this document entitled DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF DISMISSAL on the following individuals:

4

Charles S. Hamilton, III
5  600 Market Place One
2003 Western Avenue
6  Seattle, WA  98121
     *Attorney for Plaintiff*

7

[X] Via Messenger
8  [ ] Via Facsimile
[ ] Via First Class Mail

9      DATED this _6th_ day of November, 2001, at Seattle, Washington.

10

11

12                         Brina Carranza

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF DISMISSAL - 25

\\SFC3\DATA\CLIENTS\3000\000\3019\21938\FEDERAL PLEADINGS\MOT 4 SJ.DOC

STAFFORD FREY COOPER
———— *Professional Corporation* ————
A  T  T  O  R  N  E  Y  S
2500 RAINIER TOWER
1301 FIFTH AVENUE
SEATTLE, WASHINGTON 98101-2621
TELEPHONE (206) 623-9900